## WARREN v. GRIFFING.

No. 32978.   Jan. 20, 1948.

Rehearing Denied Feb. 10, 1948.

Second Petition for Rehearing
Denied March 30, 1948.

*190 P. 2d 1014.*

C. Lawrence Elder and John L. Dunn, both of Tulsa, for plaintiff in error.

A. C. Saunders, of Tulsa, and C. A. Fuller, of Eureka Springs, Ark., for defendant in error.

BAYLESS, J.   On November 13, 1945, plaintiff, F. A. Griffing, administrator of the estate of Neva Griffing, deceased, brought an action in replevin in the common pleas court of Tulsa county against defendant, Fay Warren, for the recovery of possession of certain jewelry.   The case was tried to a jury and verdict returned in favor of plaintiff for recovery of possession of the property and 6 per cent interest from November 16, 1945, for wrongful detention.   Judgment was rendered on the verdict, and defendant has appealed. Parties will be referred to as they appeared in the trial court.

Plaintiff and Neva Griffing were married in 1936.   He went into the Navy on February 20, 1945.   Between the date of their marriage and his induction into the Navy he purchased the following jewelry for his wife: a diamond bracelet, an engagement ring containing a one and one-half carat diamond with a cluster of small diamonds, a diamond wrist watch, and a dinner ring, which had a cluster of small diamonds.   Shortly after he was called into service, his wife went to Eureka Springs, Ark., to reside with her father and mother, Mr. and Mrs. Gentry Warren.   Her mother was paralyzed and was confined to her bed. Plaintiff's wife died on October 1, 1945.   He was in Puerto Rico at the time of her death but came back in time to attend the funeral. Plaintiff testified that he gave his wife $3,000 in cash when he left to go into the Navy; that she had an automobile which she sold for $1,700, that he took a five-day leave in May, 1945, and visited her in Eureka Springs; that she had all of the diamonds in her possession at that time; that he talked to her mother, and neither Neva nor her mother said anything to him about a gift of the diamonds.   Dick Simpson, vice president and cashier of the Bank of Eureka Springs, testified that he had known Neva Griffing for several years; that she came in the bank on an average of two or three times a week, and that she always wore the jewelry; that the jewelry attracted

his attention every time he saw her; that she was in the bank a day or two before she died and he discussed the value of the diamonds at that time with Mr. Fuller, the president of the bank. Testifying from the bank ledger, he stated that Neva deposited to her personal account $1,698.81 on April 4, 1945, $60 on May 3, $40 on May 4, $66 on June 6, $79.90 on August 6, and $40 on September 7, 1945; that she had $615.51 on deposit at the time of her death. Plaintiff testified that just before the funeral he asked her father about the diamonds and the father said: "I don't know anything about what is going on around here." He then talked to two brothers, R. L. and Henry Warren, who denied having any knowledge of the diamonds. He asked the defendant, who was also a brother of Neva, about them, and the defendant said he didn't know anything about it but he thought his mother had the diamonds. Defendant asked him not to speak to the mother, that the shock of asking her might kill her, but promised to get them for plaintiff within a week. The defendant failed to deliver the diamonds. On two occasions he told plaintiff he had not had time to get them. About two weeks after the funeral plaintiff and his attorney, C. A. Fuller, had a search warrant issued against the residence of Gentry Warren. During the conduct of the search, Mr. and Mrs. Warren advised plaintiff that defendant had the jewels in his possession at Tulsa. Mr. Fuller called the defendant by telephone and defendant admitted having possession of the jewels, but said he was going to turn them over to the probate court of Tulsa county. Upon failure to do so plaintiff demanded the jewels of defendant and defendant said: "As soon as that bill is settled down there we will talk about it." Neither the defendant nor his father nor mother, prior to the institution of this action, advised plaintiff that the diamonds had been given by Neva to her mother. At the close of plaintiff's testimony, defendant demurred to the evidence. The demurrer was overruled and defendant excepted.

Gentry Warren, his grandson, Tommy Warren, and Tommy's wife testified on behalf of defendant that Neva gave the jewelry to her mother between the 5th and 10th of March, 1945; that they were all present in the room when Neva handed over the jewelry to her mother. Gentry Warren testified: "Neva said, 'Mother I want you to have these diamonds for what I owe you and for your future if needed. You are in a condition you will probably need money and I want you to have them and all of my personal effects.'" Tommy Warren testified: "She (Neva) said she knew (her mother) was getting old and she wanted her to have them and sitting on the side of the bed she gave my grandmother the diamonds. She said 'That is all I have, and I want you to have them.'" Warren testified that Neva said: "'Mother I want you to have these diamonds' and she gave them to her". Defendant testified that his mother had given the jewelry to him to look after her, and that his mother and father had moved to Tulsa and were then residing in his home.

It is defendant's theory that the positive testimony of the three witnesses to the gift is uncontradicted by the testimony of any other witnesses; therefore, that plaintiff has failed to establish that his wife had title to the property at the date of her death, and likewise that he as administrator has failed to establish title and right of possession to the property.

In McClendon v. Kennedy, 182 Okla. 153, 77 P. 2d 15, we said at pages 154-5:

"'Undisputed credible testimony not inherently improbable is usually binding upon the court or jury, but evidence is not regarded as undisputed if it is at variance with the facts and circumstances in the case or reasonable inferences to be drawn therefrom or from other evidence.' Wise v. Wise, 175 Okla. 310, 52 P. 2d 715.

". . . However, if the record reveals the presence of some exception to the rule, such as stated in the quotation from Wise v. Wise, supra, a trial judge

may properly desregard testimony even though it is not disputed by any other witness. . . .

" . . . This phase of the case may be summed up with the statement that ample testimony is in the record to warrant the trial judge, if he saw fit, to disbelieve the defendant's narrations in their entirety."

As was said in the McClendon case, there is ample evidence in the record to warrant the jury's disbelieving the statements of defendant's witnesses concerning the alleged gift, even though these statements are not directly contradicted by any other witnesses. The jury was warranted in believing that Neva at all times had ample funds to pay for her board and keep. It is an extraordinary and unusual occurrence for a daughter to give her expensive jewelry to her aged and invalid mother who cannot enjoy the pleasure of wearing it. The jury was warranted in believing plaintiff's testimony that Neva was wearing the jewelry when he visited her in May, 1945, which was two months after the date of the alleged gift, and that neither Neva nor her mother mentioned the gift to him at that time. The testimony of Dick Simpson that Neva was in the bank two or three times a week up to within a day or two or her death, and that she always wore the jewelry, was credible. The fact that Neva's father, the defendant, and the other brothers did not advise plaintiff of the gift at the time of the funeral, and in fact until after suit was filed, casts a further shadow of suspicion on their testimony.

Considering plaintiff's evidence and the reasonable inferences to be drawn therefrom, we cannot say that the trial court erred in overruling the demurrer to plaintiff's evidence, or that the jury should have believed the testimony of defendant's witnesses regarding the gift, even though the transaction was not directly disputed by any other witnesses.

Defendant objects to the portion of the verdict awarding interest at the rate of 6 per cent of the value of the property from November 16, 1945, for wrongful detention. 12 O.S. 1941 §1580 provides for the recovery of damages for wrongful detention.

In Francis, Sheriff, v. Guaranty State Bank of Texola, 44 Okla. 446, 145 P. 324, we said:

" . . . Ordinarily, unless the property in suit has a usable value, and the damages may be estimated on that basis, the prevailing party in replevin will be awarded interest on the value of the property during the time of the wrongful detention. . . ."

This is a well established general rule. 54 C.J. 623, §376. Defendant contends that the administrator cannot recover interest in this action because he has only a special interest in the personal property of the estate. He cites only one authority, the Guaranty State Bank case, supra, in support of this contention. In the body of the opinion of this case, at page 451, we use this language:

" . . . If, however, on the other hand, the bank had but a special interest (as mortgagee) in the horses which conferred no right to their use, then a verdict for the usable value for the bank could not be sustained."

Neither of the parties has cited a case involving the rights of an executor or administrator in a case such as this. However, since the administrator is under legal duty to take possession of the personal property of the estate under the provision of 58 O.S. 1941 §251, and title thereto is vested in him in trust for the payment of debts of the decedent and the distribution of the remainder among the next of kin, 21 Am. Jur., Executors and Administrators, §282, 24 C.J. 203, we know of no reason and none has been called to our attention, for excepting the administrator from the operation of the general rule stated above. We find no error in allowing plaintiff to recover interest for the wrongful detention of the property.

The judgment is affirmed.