BLAGG et al. v. RUTLEDGE et al.

No. 34382.   Nov. 5, 1952.

Rehearing Denied Dec. 16, 1952.

*251 P. 2d 196.*

C. R. Thurlwell, Tulsa, for plaintiffs in error.

Thurman S. Hurst and Edwin S. Hurst, Tulsa, for defendants in error.

PER CURIAM. This action was instituted by Earl Maybee and Myrtle Kennedy against D. W. Jones and Elsie Maybee, if living and if deceased, the heirs, executors, administrators, devisees and assigns of Elsie Maybee, deceased. Thereafter, the petition of Earl Maybee and Myrtle Kennedy was amended making therein Alford Jones, W. Blagg and Elsie Maybee, if living and if she be deceased, her heirs, and the unknown heirs, executors, administrators, devisees, trustees and assigns of Elsie Maybee, deceased, defendants.

W. Blagg filed his answer and cross-petition wherein he sought to quiet title to the property involved herein. Leta Rutledge, Marjorie Bennett, Ray Eveland and Viola Faye Eveland Delozier, sole heirs of Elsie Maybee, by leave of court, intervened in said cause and sought to quiet title to said property. The plaintiffs, who were heirs of R. J. Maybee, deceased husband of Elsie Maybee, dismissed their case without prejudice, and the issues were joined as to the defendants and interveners.

The parties will be referred to herein as they appeared in the trial court.

On May 1, 1946, Elsie Maybee, who is one and the same person as Mrs. R. J. Maybee and Elsie Van Dike, was the owner of the following described real estate: lots one (1), two (2), three (3), four (4) and five (5) in block one (1) in the Original Town of Sperry, Oklahoma, together with an adjoining acreage 410 feet wide, also in the town of Sperry.

Between the 1st day of May, 1946, and the last day of October, 1946, the defendants together acquired all of the property which was owned by Elsie Maybee, who was then 80 years of age. The conveyances were as follows:

(1) Quit Claim Deed from Elsie Maybee for the four hundred and ten feet was procured for the sum of One Dollar ($1.00),

this being the property which the defendant, W. Blagg, acquired at tax resale in May, 1946, a few days prior to this quitclaim deed. This property is involved in this case only insofar as the circumstances relating to it affect the credibility of the witnesses.

(2) On July 6, 1946, a lease for 25-years was given Alford Jones by Mrs. R. J. Maybee, covering Lots One (1), Two (2), Three (3), Four (4) and Five (5) herein involved, for an annual rental of Twelve Dollar ($12.00);

this lease was recorded July 19, 1946.

(3) A Warranty Deed dated and acknowledged June 25, 1946, was given to Alford Jones by Elsie Van Dike (Mrs. Maybee) which deed covered the South Thirty (30) feet of Lot Two (2), Block Two (2), herein involved.

This deed was recorded December 6, 1948, which was after the death of Mrs. Maybee. She died November 25, 1948.

(4) There also appears a contract between Elsie Maybee and Alford Jones, dated June 25, 1946, and which purports to give Elsie Maybee the right to live in the said property as long as she lives and specifically referred to the Warranty Deed and farm lease on said property hereinabove mentioned.

This contract was filed for record January 14, 1947, and was acknowledged only by Alford Jones on January 14, 1947. This contract recites both the dates of June 25, 1946, and October 25, 1946.

The deed to Alford Jones, dated June 25, 1946, was acknowledged by Hazel B. Strong, a notary public from Tulsa, Oklahoma, and the sister of Alford Jones, grantee. She also acknowledged the warranty deed from Mrs. Maybee to W. Blagg, covering the north 20 feet of lot two (2), block one (1), and lot one (1), block one (1) of said property.

Likewise, Hazel B. Strong acknowledged the farm lease agreement of July 6, 1946, from Mrs. Maybee to Alford Jones.

The evidence further showed that the two defendants, Alford Jones and W. Blagg, and especially Alford Jones, acted for Mrs. Maybee in paying her taxes, burial association dues, utility bills and in cashing of her checks, and that Blagg took a check of $662.50 and cashed the same for Mrs. Maybee during the time of the negotiations of said property. The check bears the endorsement of both W. Blagg and Elsie Maybee.

The defendants, Blagg and Jones, plaintiffs in error herein, complain that the trial court ignored the rule laid down in the case of Koehen v. Klumen, 191 Okla. 71, 126 P. 2d 1002, as follows:

"The Supreme Court could not disregard the uncontradicted testimony of an unimpeached witness whose testimony was reasonable and was not inherently improbable."

And, in the case of Warren v. Griffing, 200 Okla. 108, 190 P. 2d 1014, the court held:

"Undisputed credible testimony if not inherently improbable is usually binding upon the court or jury, but evidence is not regarded as undisputed if it is at variance with the facts and circumstances in the case, or reasonable inferences to be drawn therefrom."

However, we cannot acquiesce in the position taken by the defendants, Blagg and Jones, that the evidence of the witnesses was unimpeachable and that their testimony was reasonable and was not inherently improbable. It is noted that the defendant Blagg testified that the money was paid to Mrs. Maybee, and the only evidence of such payment was by the defendants, Blagg and Jones. The same is likewise true of the $1,000 allegedly paid to Mrs. Maybee by W. Blagg at the time of the delivery of the deeds to Jones and Blagg. There is no other evidence of the payment of the consideration and it was not paid in the presence of the notary public who took the acknowledgments, at the time the consideration ordinarily would have passed.

Blagg was a man who purchased and dealt in tax titles, and rather than take a deed direct from Mrs. Maybee at the time of the acquisition of the property, he permitted the deed to be delivered to Jones which had theretofore been held by Mrs. Maybee, and then the deed from Jones to Blagg was dated, acknowledged and recorded on December 6, 1948, a few days after the death of Mrs. Maybee. Both Jones and Blagg testified that by reason of Mrs. Maybee being on a pension from the Welfare Department, she did not want the deed of June 25, 1946, recorded, yet the lease and contract were recorded shortly after the date of the respective instruments, which would tend to disprove the statements of Jones and Blagg.

The testimony of the defendants in some respects was contradictory, especially regarding the acknowledgments which were taken by Mrs. Strong, Blagg testifying that the acknowledgment to the Jones deed was taken after October 26, 1946, that is, after he procured the deed to the north 70 feet of said five lots, and the $1,000 consideration paid, while Mrs. Strong, the notary public, testified the acknowledgment was taken on June 25, 1946, the date shown in the acknowledgment and that no consideration was paid in her presence. And, again in connection with the $1,000 which was allegedly paid, the defendant Blagg testified the same was paid with two $500 bills, at the request of Mrs. Maybee, yet no trace was found of what was done with these bills of large denominations.

The learned trial judge was convinced that there was no consideration paid, and believed that the defendants took advantage of the confidence which they knew Mrs. Maybee had in them without the delivery of the purchase price.

In pronouncing judgment the trial court said:

"Here are the facts you ask me to believe as I understand them. Jones had a contract to buy, and she made out a deed, which she retained. He was unable to pay, and so Blagg went down and gave her $1000.00 two five-hundred dollar bills. He just happened to have ten (10) $100.00 bills which he changed for two $500.00 bills. Then he took the deed she had made to Jones —didn't take a new deed—and didn't put it on record and never asked Jones to give him a deed. He paid his $1000.00 out with no deed to him—took only a deed made to Jones and didn't even ask Jones to make a deed to him. After she died he put the deed from her— which had been in his possession—on record, and on the same date asked Jones to make him a deed. That to my mind is unbelievable, and so contrary to ordinary human experience that I find it difficult to believe that. He says Mrs. Maybee didn't want this on record because she didn't want these welfare people to know she had sold it, yet six months later, this agreement she made with Jones recites that on the 25th day of June, 1946, that she had made a deed to Jones and that was put on record in 1947. Evidently she didn't object to that going on record. On the whole it looks extremely suspicious (151-153)

"I find the issues generally in favor of the intervenors — the grandchildren of Mrs. Maybee. As I indicated the other day, the deed to lot one (1) and the north twenty (20) feet of two (2), I find the evidence is insufficient to set that aside, the other deed, however, is set aside. I find the equities in this case require Blagg be allowed to keep lot four (4) upon the payment of the value of the lot without the improvements, which I find to be $125.00. The south thirty (30) feet of Lots two (2), Three (3) and Five (5) will go to the intervenors. I believe this woman was of an age where she was easily imposed on and I doubt very much that the $1000.00 was ever paid, and it is very doubtful whether there was any legal delivery made, but conceding there was, I find no consideration was paid, and that Mrs. Maybee was over-reached, consequently the deed is set aside. (158-159)"

He did not deem the testimony of the defendants worthy of belief and the record discloses ample reason therefor, but, on the other hand, believes that the circumstantial evidence which tends to disprove the payment of the consideration and the delivery of the title to said property outweighed the positive testimony of the defendants.

Likewise, the rules which govern the review by the Supreme Court of the judgment of the trial court as to the credibility of witnesses and the weight to be given their testimony, have been many times stated by this court. In re Smith's Estate, 197 Okla. 405; 172 P. 2d 328; McAfee v. Harden, 180 Okla. 546, 71 P. 2d 463; Strahm v. Murry, 200 Okla. 640, 199 P. 2d 603; Ironside v. Ironside, 188 Okla. 267, 108 P. 2d 157.

And the court may accept circumstantial evidence on the one side and reject positive testimony on the same point on the other side, and if the evidence reasonably tends to support the findings of the trial court that these matters, and each of them, were carefully weighed and that taking the record as a whole he found that there was no consideration, no delivery, undue influence and overreaching, and an imposition on Mrs. Maybee by reason of age and mental weakness, and that all of them combined were sufficient for the trial judge to pass his judgment. There is evidence to sustain the trial court's findings on each of these matters.

The defendants, Blagg and Jones, also complain of the lack of proof of weakness of mind and undue influence. The evidence reflected in this record comes clearly within the rule announced in Griffith v. Scott, 128 Okla. 125, 261 P. 371, as follows:

"Where it is shown that a transfer of property was obtained from an aged person by one experienced in business transactions, and in whom the grantor reposed confidence and was acting upon the suggestion and advice of the grantee at the time of the execution of the claimed transfer, though such confidential relation arose upon an acquaintanceship of short duration to the time of the transaction, and that no consideration or a very inadequate consideration was paid the grantor, and there is apparent a marked disparity between the parties in mentality as by experience in business affairs, although the transaction could not have been impeached if no such confidential relation had existed, a very strong presumption of fraud arises, and, unless it is successfully rebutted, a court of equity will set aside the deed so obtained."

See, also, Russworm v. Sims, 196 Okla. 193, 164 P. 2d 238; Marten v. Wagner, 198 Okla. 273, 178 P. 2d 618.

After a careful examination of the record there is ample evidence to support the findings and judgment of the trial court. Therefore, the judgment of the district court is hereby affirmed.

This court acknowledges the services of Attorneys R. A. Belisle, Lynn Adams and Fisher Ames, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the court.

WELCH, CORN, GIBSON, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.