Walter H. ROSENGRANT, et al., Appellees,

v.

J. W. ROSENGRANT, et al., Appellants.

No. 52761.

Court of Appeals of Oklahoma, Division No. 2.

March 31, 1981.

Rehearing Denied April 16, 1981.

Certiorari Denied June 1, 1981.

Released for Publication by Order of Court of Appeals June 4, 1981.

---

Douglas L. Combs, Henry, West & Sill, Shawnee, for appellees.

George Van Wagner, Clarke & Van Wagner, Inc., Shawnee, for appellants.

BOYDSTON, Judge.

This is an appeal by J. W. (Jay) Rosengrant from the trial court's decision to cancel and set aside a warranty deed which attempted to vest title in him to certain property owned by his aunt and uncle, Mildred and Harold Rosengrant. The trial court held the deed was invalid for want of legal delivery. We affirm that decision.

Harold and Mildred were a retired couple living on a farm southeast of Tecumseh, Oklahoma. They had no children of their own but had six nieces and nephews through Harold's deceased brother. One of these nephews was Jay Rosengrant. He and his wife lived a short distance from Harold and Mildred and helped the elderly couple from time to time with their chores.

In 1971, it was discovered that Mildred had cancer. In July, 1972 Mildred and Harold went to Mexico to obtain laetrile treatments accompanied by Jay's wife. Jay remained behind to care for the farm.

Shortly before this trip, on June 23, 1972, Mildred had called Jay and asked him to meet her and Harold at Farmers and Merchants Bank in Tecumseh. Upon arriving at the bank, Harold introduced Jay to his banker J. E. Vanlandengham who presented Harold and Mildred with a deed to their farm which he had prepared according to their instructions. Both Harold and Mildred signed the deed and informed Jay that they were going to give him "the place," but that they wanted Jay to leave the deed at the bank with Mr. Vanlandengham and when "something happened" to them,[1] he was to take it to Shawnee and record it and "it" would be theirs. Harold personally handed the deed to Jay to "make this legal." Jay accepted the deed and then handed it back to the banker who told him he would put it in an envelope and keep it in the vault until he called for it.

In July, 1974, when Mildred's death was imminent, Jay and Harold conferred with an attorney concerning the legality of the transaction. The attorney advised them it should be sufficient but if Harold anticipated problems he should draw up a will.

In 1976, Harold discovered he had lung cancer. In August and December 1977, Harold put $10,000 into two certificates of deposit in joint tenancy with Jay.

Harold died January 28, 1978. On February 2, Jay and his wife went to the bank to inventory the contents of the safety deposit box. They also requested the envelope containing the deed which was retrieved from the collection file of the bank.

Jay went to Shawnee the next day and recorded the deed.

The petition to cancel and set aside the deed was filed February 22, 1978, alleging that the deed was void in that it was never legally delivered and alternatively that since it was to be operative only upon recordation after the death of the grantors it was a testamentary instrument and was void for failure to comply with the Statute of Wills.

The trial court found the deed was null and void for failure of legal delivery. The dispositive issue raised on appeal is whether the trial court erred in so ruling. We hold it did not and affirm the judgment.

The facts surrounding the transaction which took place at the bank were uncontroverted. It is the interpretation of the meaning and legal result of the transaction which is the issue to be determined by this court on appeal.

In cases involving attempted transfers such as this, it is the grantor's intent *at the time the deed is delivered* which is of primary and controlling importance. It is the function of this court to weigh the evidence presented at trial as to grantor's intent and unless the trial court's decision is clearly against the weight of the evidence, to uphold that finding.[2]

---

1. Common euphemism meaning their deaths.

2. *Blagg v. Rutledge*, 207 Okl. 559, 251 P.2d 196 (1952).

The grantor and banker were both dead at the time of trial. Consequently, the only testimony regarding the transaction was supplied by the grantee, Jay. The pertinent part of his testimony is as follows:

A. [A]nd was going to hand it back to Mr. Vanlandingham [sic], and he wouldn't take it.

Q. What did Mr. Vanlandingham [sic] say?

A. Well, he laughed then and said that "We got to make this legal," or something like that. And said, "You'll have to give it to Jay and let Jay give it back to me."

Q. And what did Harold do with the document?

A. He gave it to me.

Q. Did you hold it?

A. Yes.

Q. Then what did you do with it?

A. Mr. Vanlandingham [sic], I believe, told me I ought to look at it.

Q. And you looked at it?

A. Yes.

Q. And then what did you do with it?

A. I handed it to Mr. Vanlandingham [sic].

Q. And what did he do with the document?

A. He had it in his hand, I believe, when we left.

Q. Do you recall seeing the envelope at any time during this transaction?

A. I never saw the envelope. But Mr. Vanlandingham [sic] told me when I handed it to him, said, "Jay, I'll put this in an envelope and keep it in a vault for you until you call for it."

        *     *     *     *     *     *

A. Well, Harold told me while Mildred was signing the deed that they were going to deed me the farm, but they wanted me to leave the deed at the bank with Van, and that *when something happened to them* that I would go to the bank and pick it up and take it to Shawnee to the court house and record it, and *it would be mine.* (emphasis added)

When the deed was retrieved, it was contained in an envelope on which was typed: "J. W. Rosengrant- or Harold H. Rosengrant."

■ The import of the writing on the envelope is clear. It creates an inescapable conclusion that the deed was, in fact, retrievable at any time by Harold before his death. The bank teller's testimony as to the custom and usage of the bank leaves no other conclusion but that at any time Harold was free to retrieve the deed. There was, if not an expressed, an implied agreement between the banker and Harold that the grant was not to take effect until two conditions occurred—the death of both grantors and the recordation of the deed.

■ In support of this conclusion conduct relative to the property is significant and was correctly considered by the court. Evidence was presented to show that after the deed was filed Harold continued to farm, use and control the property. Further, he continued to pay taxes on it until his death and claimed it as his homestead.

■ Grantee confuses the issues involved herein by relying upon grantors' goodwill toward him and his wife as if it were a controlling factor. From a fair review of the record it is apparent Jay and his wife were very attentive, kind and helpful to this elderly couple. The donative intent on the part of grantors is undeniable. We believe they fully intended to reward Jay and his wife for their kindness. Nevertheless, where a grantor delivers a deed under which he reserves a right of retrieval and attaches to that delivery the condition that the deed is to become operative only after the death of grantors and further continues to use the property as if no transfer had occurred grantor's actions are nothing more than an attempt to employ the deed as if it were a will. Under Oklahoma law this cannot be done. The ritualistic "delivery of the deed" to the grantee and his redelivery of it to the third party for safe keeping created under these circumstances only a

symbolic delivery. It amounted to a pro forma attempt to comply with the legal aspects of delivery. Based on all the facts and circumstances the true intent of the parties is expressed by the notation on the envelope and by the later conduct of the parties in relation to the land. Legal delivery is not just a symbolic gesture. It necessarily carries all the force and consequence of absolute, outright ownership at the time of delivery or it is no delivery at all.[3]

The trial court interpreted the envelope literally. The clear implication is that grantor intended to continue to exercise control and that the grant was not to take effect until such time as both he and his wife had died and the deed had been recorded. From a complete review of the record and weighing of the evidence we find the trial court's judgment is not clearly against the weight of the evidence. Costs of appeal are taxed to appellant.

BACON, P. J., concurs and BRIGHTMIRE, J., concurs specially.

BRIGHTMIRE, Judge, concurring specially.

In a dispute of this kind dealing with the issue of whether an unrecorded deed placed in the custody of a third party is a valid conveyance to the named grantee at that time or is deposited for some other reason, such as in trust or for a testamentary purpose, the fact finder often has a particularly tough job trying to determine what the true facts are.

The law, on the other hand, is relatively clear. A valid *in praesenti* conveyance requires two things: (1) actual or constructive delivery of the deed to the grantee or to a third party; and (2) an intention by the grantor to divest himself of the conveyed interest. Here the trial judge found there was no delivery despite the testimony of

Jay Rosengrant to the contrary that one of the grantors handed the deed to him at the suggestion of banker J. E. Vanlandengham.

So the question is, was the trial court bound to find the fact to be as Rosengrant stated? In my opinion he was not for several reasons. Of the four persons present at the bank meeting in question only Rosengrant survives which, when coupled with the self-serving nature of the nephew's statements, served to cast a suspicious cloud over his testimony. And this, when considered along with other circumstances detailed in the majority opinion, would have justified the fact finder in disbelieving it. I personally have trouble with the delivery testimony in spite of the apparent "corroboration" of the lawyer, Jeff Diamond. The only reason I can see for Vanlandengham suggesting such a physical delivery would be to assure the accomplishment of a valid conveyance of the property at that time. But if the grantors intended that then why did they simply give it to the named grantee and tell him to record it? Why did they go through the delivery motion in the presence of Vanlandengham and then give the deed to the banker? Why did the banker write on the envelope containing the deed that it was to be given to either the grantee "or" a grantor? The fact that the grantors continued to occupy the land, paid taxes on it, offered to sell it once and otherwise treated it as their own justifies an inference that they did not make an actual delivery of the deed to the named grantee. Or, if they did, they directed that it be left in the custody of the banker with the intent of reserving a *de facto* life estate or of retaining a power of revocation by instructing the banker to return it to them if they requested it during their lifetimes or to give it to the named grantee upon their deaths. In either case, the deed failed as a valid conveyance.

3. In *Anderson v. Mauk*, Okl., 67 P.2d 429 (1937), the court stated:

[I]t is the established law in this jurisdiction that when the owner of land executes a deed during his lifetime and delivers the same to a third party (who acts as a depository rather than an agent of the property owner) with instructions to deliver the deed to the grantee therein named upon his death, *intending at the time of delivery to forever part with all lawful right and power to retake or repossess the deed,* or to thereafter control the same, the delivery to the third party thus made is sufficient to operate as a valid conveyance of real estate.

I therefore join in affirming the trial court's judgment.