Walter Lee **BINGHAM**, Appellant,

v.

Mary L. **BINGHAM**, Appellee.

No. 53540.

Court of Appeals of Oklahoma, Division No. 2.

May 5, 1981.

Released for Publication by Order of Court of Appeals June 11, 1981.

Lloyd K. Holtz, Whitebook, Holtz, Gaddis & Mundell, Tulsa, for appellant.

James W. Summerlin, Summerlin, Williams & Zacharias, Claremore, for appellee.

BOYDSTON, Judge.

This is an appeal by Walter Lee Bingham (hereinafter referred to as Husband) from the trial court's order modifying a divorce decree wherein he was not required to pay any child support for his adopted children. The court ordered him to begin paying $75 per month, per child, until each reached majority. Husband appeals.

The pertinent facts arise from an increasingly common occurrence in that Husband married a woman, Mary Bingham (hereinafter referred to as Mother), who brought three children from a previous relationship into the new marriage. Husband adopted the children as his own, but the marriage dissolved in less than two years.

In the original divorce decree, the court approved the following provision relative to the adopted children:

It is further ordered, adjudged and decreed by the court that the defendant be and she is hereby granted the primary care and custody of the minor children, Jimmie Bingham, Timothy Bingham, and Jeffry Bingham, and the *plaintiff is excused from the payment of child support* for said minor children during their minority; and *plaintiff is without visitation rights* to the said minor children." (emphasis added)

Ten months after the divorce, Mother filed a motion to modify asking for child support based upon the allegation that a change of conditions had occurred. At the hearing Mother presented evidence showing her expenses had increased since the divorce primarily in the area of the children's health care. The evidence established she had encountered additional expenses due to hearing and vision problems and certain learning disabilities which had developed. Husband's evidence showed he was now earning less money than at the time of the divorce. In fact, his earning capacity had decreased substantially at the time of the hearing due to a temporary medical disability.

The court found there had been a "change of conditions" since the rendition of the original decree and ordered Husband to begin paying child support for the two youngest children.[1]

On appeal, Husband raises the following issues:

(1) Whether the court erred in finding substantial change of conditions sufficient to warrant modification of the child support order; and,

(2) Whether the support order is excessive.

■ It is the function of this court to weigh all the evidence presented and unless the trial court's decision is clearly against the weight of that evidence to uphold the judgment rendered below.[2] In this instance the trial court's order is supported by both law and evidence.

I

■ The thrust of Husband's first proposition is, since his financial status has changed *for the worse* no condition exists to justify modification. This may have been a valid argument if the original decree had provided support based on his then existing financial status. However, we find no evidence that the provision in the decree which relieves him of the duty to support his children was based on his ability to pay. Further, we find that provision to be voidable as against public policy.

■ A review of the original decree clearly shows nothing unusual in the division of the marital estate. The only provision which is extraordinary is the one concerning Husband's financial obligations for the support, care and nurturing of the children. In this respect it is apparent both parties agreed to ignore the legal and moral implications of the adoption. They agreed Husband, the father of these children,

1. At the time of trial, one child had attained majority leaving two children entitled to support.

2. *Blagg v. Rutledge*, 207 Okl. 559, 251 P.2d 196 (1952).

would be allowed to ignore his parental prerogatives and duties relating to visitation, thus depriving the children of the companionship, training, care and nurturing to which they are entitled. In exchange, Mother bartered away the children's right to be parentally and financially supported. In so doing the parties made a "contract" which no court should condone or perpetuate, absent proper evidence justifying the proposed parental limitations.

The provision, which we note was included in the decree as part of the agreement privately reached by the parties in the uncontested divorce, has the practical effect of terminating the parental rights of the father.

 Oklahoma law provides strict statutory guidelines which clearly establish that the court alone has the power to sever parental rights and only upon a finding that termination is in the best interests of the children.[3] While it is permissible for a parent to consent to the termination of his or her rights, this must be done in strict conformance to the statutes which require notice to be given and a hearing to be held. This statutory procedure recognizes the overriding interest of the state in protecting and providing for children.

 That same state interest is reflected throughout the statutes which regulate the creation of parental responsibilities through adoption. Those statutory requirements are strict so that the state may do its utmost to insure that the awesome responsibilities and rights undertaken by the adopting parents are, in fact, knowingly assumed by those parents. The effect desired by the state is that the legal process of adoption will culminate in the creation of a family unit which is indistinguishable from one wherein the children are conceived and nurtured by their biological parents.

 Parental rights, whether created by the natural relationship of parent and child or created by the state through adoption

may only be terminated or impaired upon a clear finding by the court after an evidentiary hearing that it is, in fact, in the best interests of the children to enter such an order.

 In the case at bar no such evidence was presented. For the court to enter such a finding under these circumstances is in direct violation of the statutory duty of that court to provide for the support of the minor children of the parties to a divorce action.[4] This duty cannot be set aside by an agreement of the parties[5] and any such agreement which is allowed to be entered as part of a divorce decree is unenforceable.

To ignore the full legal implications of the fact of adoption is to relegate it to a second-class parental relationship, a result which is contrary to public policy. The courts cannot force parents to behave privately as responsible parents, but neither should we encourage irresponsibility by cloaking it with the dignity of a court order.

 We hold that portion of the original decree which purports to deprive Husband of the usual parental rights and duties is voidable and subject to attack at any time. Further, we hold no proof of a change of circumstances is necessary to invoke the right of visitation or to impose the obligation to pay child support under the circumstances presented herein.

 We agree with the argument that a change of circumstance must necessarily be proven in order to modify the *amount* of child support to be paid in a divorce action. However, in this case, the question presented is not by how much child support payments should be modified but is rather whether it should be paid at all. In this limited circumstance we hold that where no support for minor children is provided in the divorce decree, this constitutes error on the part of the trial court[6] and no change of circumstance need be shown to

3. 10 O.S.Supp.1976 § 1130.

4. *Wade v. Wade*, Okl., 570 P.2d 337 (1977); *Donahoe v. Alcorn*, 188 Okl. 305, 108 P.2d 786 (1940).

5. *Parkey v. Parkey*, Okl., 371 P.2d 711 (1962).

6. 12 O.S.Supp.1976 § 1277.

invoke the father's statutory obligation to support his children.[7] Further, this rule applies to adopted as well as natural born children for once the adoption process is complete, there is no legal distinction to be drawn between the two.

■ The trial court correctly held Husband's obligation to pay child support be invoked and we further find the amount imposed is not clearly against the weight of evidence.

We therefore affirm the judgment of the trial court and tax costs of appeal equally between the parties.

BACON, P. J., concurs.

BRIGHTMIRE, J., concurs in part and dissents in part.

BRIGHTMIRE, Judge, concurring in part and dissenting in part.

I do not view the child custody and support provision in the decree as voidable,[8] or as one terminating the parent-child relationship, nor do I think it relegates an adoptive relationship to a second-class status.[9] To hold that subject agreement and order are contrary to public policy is to collide head-on with the exceedingly strong public policy that encourages litigants to resolve their differences outside of the courtroom.

Filial affection, involving either natural or adoptive children, cannot be contracted for nor judicially decreed. It is a personal relationship that must ebb and flow with time, yield to altering circumstances, and, in the area of family law, strive to survive the deep and unpleasant stresses of a one-parent custodial commitment.

Parents have no vested property rights in children. What rights they have are subject to the supervening power of the state to protect the welfare of children. Within the parameters of the best interest criterion, I perceive no legitimate reason why divorcing parents should not be urged to agree on matters of custody, support and other related incidentals pertaining to their minor children. Such agreement is, of course, not binding on the court. He may disapprove it if he finds it not be in the best interest of the children or he may approve it if he finds their interest is unaffected or improved.

An agreement such as we have here is not altogether surprising in view of the short duration of the marriage. What started out as connubial euphoria soon foundered on the shoals of dissension. Details of why the adoptions occurred are not available to us. I suppose one might speculate that the idea of the man adopting the

7. 10 O.S.Supp.1976 § 4.

8. It should be pointed out that in holding that subject decree provision is voidable "and subject to attack at any time," the majority opinion implies, mistakenly, this is a collateral proceeding. Also overlooked is the fact that its conclusion is contrary to long established precedent. A judgment that is void may be collaterally attacked at any time, but not one that is merely voidable. *Woodrow v. Ewing,* Okl., 263 P.2d 167 (1953). The fact is, however, that the woman is not trying to "attack" the decree, but merely trying to modify it.

9. The majority apparently cites *Parkey v. Parkey,* Okl., 371 P.2d 711 (1962), for the conclusion that the parties cannot by agreement "set aside" the "duty of [the] court to provide for the support of ... minor children." I agree that such a thing may not be done. If, however, *Parkey* is being cited as holding that the parties may not make an agreement as to the support of their minor children, then I disagree because there is no such holding in *Parkey.* True, it does contain some dictum in it to the effect that a "wife cannot, by contract, relieve her husband of his duty to support their minor children." But this statement was actually an aside. It was not germane to any issue decided by the court and, being dictum, is without any operative effect. *Eckels v. Traverse,* Okl., 362 P.2d 683 (1961).

Incidentally, *Parkey* picked up the discriminatory remark from more mere dictum of a syllabus found in *Donahoe v. Alcorn,* 188 Okl. 305, 108 P.2d 786 (1940). *Donahoe,* in turn, evidently copied the statement from a syllabus found in *Bynum v. Bynum,* 184 Okl. 36, 84 P.2d 424 (1938)—a syllabus that was also dictum since the language was not used in the body of the opinion nor was such a concept essential to the decision.

Today courts are beginning to see child custody and support duties as a two-parent obligation in situations were there are, of course, two parents. So long as the children are taken care of adequately, I fail to see why gender-based concepts must control to the exclusion of what might be other, more significant and overriding considerations.

boys emerged in the warm glow of embers wrought by the romantic flames that engulfed two lovers who, before the chilling effect of daily nuptial realities overcame them, headily assumed their vows would attain a live-happily-ever-after storybook ending. Whether the adoptive father was close to his children or whether the relationship disintegrated along with the marriage we are not told. But one might well assume that the parents, in entering into the agreement they did, did so for what they both considered to be the best interest of the children. And one might also assume the court approved the agreement for the same reason. There is testimony that the agreement was conceived by the mother and nurtured by her desire to have the father pay off some $70,000 in debts, some of which were hers. Why she insisted on the father foregoing his visitation rights is not clear. On the other hand, although it was the father who filed this lawsuit, she testified that he told her he would not give her a divorce if he had to pay child support and she agreed because she had to get away from him. Given evidence of such antipathy, the thought looms large that the children might well have also felt the need to avoid visitation with their adoptive dad. But however that may be, the fact is she walked away with most of the property the parties had, including a nearly new 1976 Chrysler car, while he got most of the debts.

Just what happened during the next ten months to significantly change the situation in favor of the woman is cloudy. She pleaded only that "she [could] no longer adequately support, feed, clothe, house and maintain the minor children without the aid and contribution of the adoptive father" and asked the court to require the father to pay some child support. Her evidence was that one boy lost part of his hearing and the other boy suffered from dyslexia—a reading disability—and needed some remedial tutoring because he was not doing well in school. The father, on the other hand, testified there was no post divorce change in conditions, except that he was seriously injured in a car wreck and has suffered a substantial decrease in earnings.

I agree that the court retained jurisdiction to modify the decree and that there is probably sufficient, though marginal, evidence of changed circumstances to justify the modification. I disagree, however, with the notion that the original agreement violated any sort of public policy or that it negated any of the legal attributes of the adoptive status. Of course, had the parties attempted in some way to annul the relationship by, say, agreeing that the children could not inherit from the man, the effort would have to be condemned as illegal.

I, therefore, concur in the result reached by the majority but dissent as to the obiter dicta regarding the validity of the custodial agreement and order.