231 P.3d 785 (2010)
2010 OK CIV APP 34
In the Matter of E.G., a Deprived Child.
Darla GILES, Appellant,
v.
The State of Oklahoma, Appellee.
No. 107,343. Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 3.
Court of Civil Appeals of Oklahoma, Division No. 3.
March 5, 2010.
*786 Sherry J. Neal, Oklahoma City, OK, for Appellant.
Jane A. Brown, Assistant District Attorney, Oklahoma City, OK, for Appellee.
BAY MITCHELL, Judge.
¶ 1 Appellant Darla Giles (Mother) appeals an Order terminating her parental rights to her minor child, E.G. upon a finding that she failed to correct the conditions leading to the adjudication of the child's deprived status pursuant to 10 O.S.2001 § 7006-1.1(A)(5).[1] This Order was entered upon a unanimous jury verdict. Mother argues on appeal that the jury verdict is not supported by sufficient evidence of a failure to correct conditions (she claims she completed most of her service plan and that the trial court's Order fails to specify the conditions she failed to correct). She also contends the state failed to present competent medical expert witness testimony regarding Mother's mental deficiency.
¶ 2 A Petition was filed in October 2006[2] alleging Mother's children to be deprived because they are destitute, homeless, or abandoned; do not have the proper parental care and guardianship; their home is unfit and unsafe for children; neglect, cruelty depravity on the part of their parents or the person who cares for them; failure to protect from physical abuse of Mother's husband; Mother's mental illness; and lack of adequate shelter.
¶ 3 On March 12, 2007, Mother stipulated to the deprived status of her three little girls (five-year-old A.J., four-year-old K.D., and one-year-old E.G.). A treatment plan was *787 adopted in April 2007, which ordered Mother to enroll in and successfully complete parenting skills class, complete substance abuse evaluation and follow recommendations of the services provider, attend individual and family counseling, refrain from any physical or verbal altercations with her extended family members, obtain appropriate housing, complete psychological evaluation and follow all recommendations of the psychologist, enroll in a GED program to increase her employment options, secure a legal source of income that adequately takes care of her family's financial needs, and cooperate with all worker visits from the Department of Human Services (DHS) and CASA.
¶ 4 Prior to trial, upon the recommendation of DHS, the court ordered custody of Mother's two older daughters be transferred to their father, who resided in Arizona.[3] Thus, her parental rights only as to the youngest child, E.G., were at issue at trial.[4] The trial took place in June 2009 with evidence presented pertinent to Mother's adherence to the treatment plan and correction of conditions. While the evidence demonstrated Mother's completion of some of the plan requirements, i.e., completion of parenting skills classes, evidence also demonstrated her failure to correct some of the conditions, notably the condition that she maintain stability in her housing situation.[5] Additionally, the evidence shows Mother was often late and missed numerous individual counseling sessions and that she had made little progress in counseling.[6]
¶ 5 The record reflects the matter was initially scheduled for trial in December 2008, but was continued in accordance with the DHS permanency planning worker's recommendation to give Mother additional time to correct the conditions that remained uncorrected (specifically she needed to maintain housing for at least six months and maintain employment). At the conclusion of evidence and upon instructions being given, the jury entered a verdict terminating Mother's parental rights.
¶ 6 Section 7006-1.1(A)(5) (now renumbered as 10A Supp.2009 § 1-4-904(B)(5)) permits the termination of parental rights when a child has been adjudicated to be deprived, the parent failed to correct the condition(s) leading to the deprived adjudication, the parent has been given at least three (3) months to correct the condition(s), and termination of parental rights is in the best interests of the child. While the State bears the burden of proof by clear and convincing evidence of the elements for termination of parental rights, once they are shown, the burden shifts to the parent to demonstrate the conditions which led to the deprived adjudication have been corrected. In re M.C.M., 2008 OK CIV APP 29, ¶ 11, 180 P.3d 688, 690. In reviewing a termination order, the appellate court must canvass the record to determine whether the factual findings are supported by clear and convincing evidence. In re S.B.C., 2002 OK 83, ¶ 6-7, 64 P.3d 1080, 1082. Clear and convincing evidence is that measure of proof that "will produce in the mind of the trier of fact a firm belief or *788 conviction as to the truth of the allegation sought to be established." Matter of C.G., 1981 OK 131, ¶ 17, n. 12, 637 P.2d 66, 71 (emphasis added). This standard balances the parents' fundamental right with the State's duty to protect children from harm. Id., ¶ 17, 637 P.2d at 70.
¶ 7 Mother argues the Order on appeal is fatally defective in that it lacks specificity as to its finding of the conditions she failed to correct. She specifically complains "[t]here was no clear indication [in the termination order] of what mother failed to correct." Mother's argument is unpersuasive because there is no Oklahoma Supreme Court precedent mandating such precise detail in Orders terminating parental rights for failure to correct conditions, particularly where the record clearly demonstrates that the parent was provided adequate notice of the conditions requiring correction throughout the adjudication and termination proceeding.[7] Of course, due process requires sufficient notice to the parent of the specific conditions which the law requires to be changed. In re B.M.O., 1992 OK CIV APP 89, 838 P.2d 38. Here, the specific conditions were articulated in the treatment plan which was acknowledged and approved by Mother, court-approved and adopted by the court as the judicially ordered norms of conduct. It provides, inter alia, "Conditions that need to be corrected: Mr. and Mrs. Giles needs [sic] to obtain appropriate housing." The housing condition was additionally reiterated in the Amended Petition, which was expressly referenced in the Order terminating parental rights. Thus, Mother cannot seriously claim she had no notice of the conditions for which she was charged with correcting, despite the lack of detail in the termination Order.
¶ 8 The evidence clearly demonstrates Mother had failed to secure suitable housing in correction of the express condition stated in the Amended Petition "[t]hat the MOTHER has not provided a safe, suitable, fit home for the children." Although Mother insists that she has leased an apartment, her own testimony reveals that she does not live there regularly. While Mother explained she moves frequently to avoid conflict with her husband, a DHS permanency planning worker testified Mother's instability is a learned behavior based upon her own childhood experience of growing up in 27 different states. The DHS worker testified, "[I]t's unfortunate because I believe that [Mother] is caught in a cycle of repeating what she knows as being normal. She cannot maintain a place of employment, she cannot maintain a residence, there is continued family conflict." Additionally, another DHS caseworker testified that even if Mother did have a home, she would still recommend termination of Mother's parental rights because of her chaotic lifestyle.[8] We find clear and convincing evidence that Mother failed to secure a home suitable for the child, and thus failed to correct conditions within the statutory time allowed.
¶ 9 Mother's second proposition of error is that the State failed to prove Mother's mental illness by expert medical opinion. Mother concedes the State did not seek parental rights termination on the basis of her mental illness, but argues it should have done so pursuant to 10 O.S. § 7006-1.1(A)(13)[9] rather than for failure to correct *789 conditions under § 7006-1.1(A)(5). Mother argues for the application of ¶ 13 apparently because of its additional statutory element requiring expert medical opinion that the parent's mental illness or mental deficiency "will not substantially improve" before parental rights will be terminated. Mother's argument fails because the State never sought to prove that Mother's mental condition specifically constituted a cause of the child's deprived status. In fact, the State's brief includes the acknowledgment that Mother's level of mental deficiency is not to the extent contemplated by the statute and therefore, is not the proper basis for termination. The State presented no expert medical opinion on the issue of mental illness because such was not the basis upon which termination was sought and medical expert opinion is not a statutory requirement where termination of parental rights is sought for failure to correct conditions.[10]
¶ 10 Further, from the record presented, we discern that Mother neither objected to the jury instructions for termination based upon failure to correct conditions under 10 O.S. § 7006-1.1(A)(5), nor does the record disclose that she requested a jury instruction for termination under § 7006-1.1(A)(13), which "is fatal to review of any complaint beyond one for fundamental error, of which we discern none." In re M.C.M., 2008 OK CIV APP 29, ¶ 22, 180 P.3d 688, 692 (citing 12 O.S. § 578).
¶ 11 Although unraised, we note a fundamental deficiency in the Order, which requires correction. The Order fails to make any finding whatsoever regarding the best interests of the child. "Parental rights ... may only be terminated or impaired upon a clear finding by the court after an evidentiary hearing that it is, in fact, in the best interests of the children to enter such an order." Bingham v. Bingham, 1981 OK CIV APP 26, ¶ 13, 629 P.2d 1297, 1300. Given the lack of an express finding in the Order that termination of Mother's parental rights was in the child's best interests, the Order must be remanded to the trial court, not for a new trial, but with instructions for the trial court to enter a proper final order correcting this deficiency.
¶ 12 Our review of the record reveals that, while clear and convincing evidence supports the determination that Mother failed to correct the conditions which led to the deprived adjudication, the Order is absent a finding that termination of Mother's parental rights is in the best interests of the child. Accordingly, the Order is VACATED AND REMANDED WITH INSTRUCTIONS TO CORRECT THE DEFICIENCY DESCRIBED HEREIN.
BELL, V.C.J., concurs; JOPLIN, P.J., dissents.
JOPLIN, P.J., dissenting.
I would affirm the trial court's order.
NOTES
[1] Title 10 O.S. § 7006-1.1(A)(5) provides that parental rights may be terminated based on these four findings:

a) the child has been adjudicated to be deprived, and
b) such condition is caused by or contributed to by acts or omissions of the parent, and
c) termination of parental rights is in the best interests of the child, and
d) the parent has failed to show that the condition which led to the adjudication of a child deprived has been corrected although the parent has been given not less than the time specified by Section 7003-5.5 of this title to correct the condition.
This statutory provision was renumbered as Title 10A § 1-4-904(B)(5), effective May 21, 2009.
[2] An Amended Petition, which reiterates the conditions leading to the children's deprived status, was filed April 28, 2008. The Amended Petition is expressly referenced in the Order on appeal.
[3] Although Mother testified that she consented to the custody transfer of the two older girls to their father in Arizona, the record reflects she contested it.
[4] E.G.'s father consented to the termination of his parental rights in this matter.
[5] Mother reported to DHS eight different residences since December 2007, including a three or four month stay at a battered women's shelter. One of the residences did not have running water, another move was necessitated by fire, and another was caused by eviction. At the time of trial, she testified that although she was currently leasing her brother's apartment, she does not stay there on a regular basis. She stayed at undisclosed locations to avoid her husband's ongoing harassment and threats.
[6] Mother admitted to being diagnosed in 2004 with post-traumatic stress disorder (PTSD) and depression. The record reflects that in 2005, Mother previously relinquished custody of her two older daughters to their maternal grandmother due to the PTSD. (Approximately one year later when Mother sought to re-gain custody of her older daughters, the maternal grandmother contested, a courthouse altercation ensued in October 2006, and the court referred the matter to DHS.). At trial, she admitted that she had attempted suicide in 2005, but insisted that her mental condition had since improved. She testified, "I don't have really much issue with my PTSD."
[7] However, without citation to Oklahoma Supreme Court authority, three divisions of this Court have noted the deficiency of termination orders for failure to identify the specific statutory basis relied upon for termination. See In re L.S., 1990 OK CIV APP 94, 805 P.2d 120; In re E.M., 1999 OK CIV APP 32, 976 P.2d 1098; In re M.D.R., 2002 OK CIV APP 75, 50 P.3d 1160. The Order on appeal in this case contains citation to the applicable statutory authority and thus, survives scrutiny under these authorities.
[8] The caseworker attributed Mother's chaotic lifestyle to the "domestic violence relationship" she was in with her husband and "all the family members constantly fighting with each other."
[9] § 7006-1.1(A)(13) provides for the termination of parental rights upon "[a] finding that all of the following exist:

a. the child has been adjudicated deprived, and
b. custody of the child has been placed outside the home of a natural or adoptive parent, guardian or extended family member, and
c. the parent whose rights are sought to be terminated has a mental illness or mental deficiency, as defined by Section 6-201 of Title 43A of the Oklahoma Statutes, which renders the parent incapable of adequately and appropriately exercising parental rights, duties and responsibilities, and
d. the continuation of parental rights would result in harm or threatened harm to the child, and
e. the mental illness or mental deficiency of the parent is such that it will not respond to treatment, therapy or medication and, based upon competent medical opinion, the condition will not substantially improve, and
f. termination of parental rights is in the best interests of the child.
[10] Mother neither argues, nor does the evidence reflect that the conditions in need of correction were anything other than conditions within her ability to correct. Further, she presented no evidence to establish that her mental condition constituted the condition in need of correction or that the conditions such as her lack of permanent housing flowed directly from the mental condition itself. See In re M.C.M., 2008 OK CIV APP 29, ¶ 22-23, 180 P.3d 688, 692-93. While Mother clearly demonstrated her ability to correct conditions by completing some of the treatment plan requirements, she blames a variety of circumstances (rather than her mental condition) for her failure to correct other conditions.